515-0087 People v. James Choate. Welcome back, Ms. Nam. Good morning, Your Honor. Good morning. You can proceed when you're ready. May it please the Court, Counsel, Assistant Appellate Defender Eun Sun Nam on behalf of James Choate. There are two issues on appeal, but we're starting with the second argument today, which is whether Mr. Choate's case must be remanded because the State has conceded error and that the trial court failed to adequately comply with Illinois Supreme Court Rule 431B when questioning the veneer. Are you going to argue at all on the first issue? Yes, I'm going to get to that as well. And when Mr. Choate's case hinged on a credibility determination, the evidence here was closely balanced. To be clear, Mr. Choate isn't arguing sufficiency of the evidence. He's not arguing that the State failed to meet their burden to prove him guilty beyond a reasonable doubt. And as our Supreme Court has recently addressed in People v. Seve, the only contention here today where the State has conceded error regarding the actual admonishments by the trial court, the only issue before this Court regarding this argument is whether the evidence was closely balanced. In here, there was no eyewitness corroboration, there was no physical corroboration, and there was no admission of guilt from Mr. Choate. Even though there are two physical exams, one was a specific sexual abuse medical exam, there was no physical corroboration. And while this alone may not be indicative one way or the other, when combined with the fact that Mr. Choate didn't admit to guilt from the start, so there's no admission whatsoever, and while there were quite a few witnesses at trial, no witnesses testified that they saw anything strange going on between them or anything of that sort. So with this combination, everything supports this argument that the evidence here was closely balanced when there is a credibility determination to be made between S.S.'s allegations and Mr. Choate's allegations. Well, Mr. Choate, everything points to that. I thought there was a pretty unusual, almost extraordinary outcry in that this young girl just out of the blue brings up the whole issue of abuse when riding with the DCFS caseworker. That's correct, Your Honor. So there was an outcry, yes. But that's still an outcry from S.S. So ultimately, I think, it was an outcry from S.S., the minor. So the source of briefs testimony, the source of Miller's CAC interview, that's all still coming back from S.S. So it's still her credibility against Mr. Choate's credibility. And S.S.'s credibility was slightly, there was a little bit of a question there because one of the witnesses testified that she did tell fibs, she did lie at times to get attention. Who was that witness? I think it was Lisa Clark. It was during the defense's testimony, or defense's case in chief. So there's still a credibility issue here. So it's S.S. versus Mr. Choate's testimony. And both parties, in fact, did present a plausible version of the events. So we have S.S.'s version that came out in the state's case, and we have Mr. Choate's version. And they do say that S.S. was a good child. Mr. Choate and S.S. had good relationships. It had a good relationship. But ultimately, what we have here is two different parties and two different versions of the events. So we come back to the fact that this is a credibility contest. And it's necessary for this court to use a common sense analysis, qualitative assessment, and not merely a quantitative assessment. And as the defense, as we cite Sebi and Naylor, these are opposing versions of events. And where there's no extrinsic evidence, this necessarily boils down to a credibility assessment. I think it was either 8 or 10, Your Honor. She's older than 30. So now regarding Argument 2, unless there's any questions regarding evidence being closely balanced. Was this a family in crisis already? Yes, Your Honor. So that came out of trial. There were two families living in this trailer in Sumner. I think it was family of S.S.'s mother. They had two boys in that family. And one of the boys ended up going to the hospital and was in critical condition. And that's why S.S. and the other minor was taken from the home by DCFS. So it had nothing to do with any suspicion at all? No, Your Honor. And Argument 2 is regarding jury instruction. So I want to make that clear. This is also not a sufficiency of the evidence argument. This is a jury instruction argument. This is a sufficiency of counsel argument as well? So ineffective assistance, yes, Your Honor. So the trial court had a duty to properly and completely instruct the jury. And we also alleged that it was ineffective of trial counsel to not request this jury instruction. So the issue in Argument 2 is whether the trial court erred in instructing the jury that the data we alleged the offense was immaterial. Thereby allowing the jury to potentially convict Mr. Schoen if it simply found that the offense charge, which was digital penetration, was committed regardless of jurisdiction. So as the state argues, the jury does not leave their common sense at the door when they come in for trial. And while that may be true, jurors also do not come in with legal knowledge. And that's why we have attorneys and judges and jury instructions. So how was it disputed, though, since the questioning, the direct and the cross all went to the Illinois incident, which we know occurred January 30th, thereabouts. And what is the dispute? And in closing, that's all that was addressed as well. In fact, in closing, I think the defense counsel made an admission to that. Yes. Well, Your Honor, I would disagree in the fact that SS and the state's case in chief dealt heavily about the Indiana acts or alleged acts in Indiana. But the jury was instructed that it was in reference to the January 30th. And she was in Indiana in 2013 in December, correct? Well, prior to January. That's correct, Your Honor. But we have instruction IPI criminal 3.01, which stated regardless of the date, date doesn't matter, as long as you find that the sexual act that's alleged in the state's charging document occurred, you can convict Mr. Schoen. So that's the problem here, is that no matter what, we have a lot of evidence about Indiana. Mr. Schoen and the family lived in Illinois for a small amount of time. Otherwise, the prior alleged acts that came out in the CAC interview, the testimony, happened in Indiana. So we have quantitatively a lot of Indiana evidence coming in, and we have the Sumner incident, but the jury was told that the date didn't matter. So ultimately, without telling the jury that the date doesn't matter, but also you have to convict him based on Illinois acts, I think Mr. Schoen definitely has a legitimate concern here that he could have been convicted of acts, or maybe a combination of acts between Illinois and Indiana. So that's where this issue comes in, where the jury came in with zero knowledge of the law, so they don't know that when you say, on or about January 30th, or that the date doesn't matter, meaning maybe the 29th, the 30th, or the 31st, they don't know that. They come in with, date doesn't matter, they weren't given a jurisdictional instruction, so they don't know that we're only looking at the Illinois act to convict him here. And technically, he could be charged in Indiana, but now we don't have that certainty that he was only convicted of the Illinois act here. And here, Estes alleged hand-to-penis contact and finger-in-vagina contact, and she said that this happened numerous times in the past, that this has been happening for a while. And she talks about all the places that it happened, in Hammond, in Vincennes, while she was at the Riley School. Unless you have any further questions? Yes, Your Honor. Was there emotional lamenting made to give the Indiana evidence out? As far as I recall, Your Honor, there wasn't. But there was a pretrial conversation about this when the trial court observed the CAC interview. They talked about, you know, if that interview comes in, there was significant amount of evidence of Indiana acts in that video. So if that comes in, then Mr. Schultz has, you know, needs to be able to defend that. So they had a pretrial conversation about it. And there was no request for that? As far as I can recall, there wasn't. No, I appreciate it. Thank you very much. Thank you, Your Honor. Good morning. May it please the Court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. Before getting into the guts of the state's argument, I'd like to briefly touch on a couple of points from the defendant's reply brief. First of all, the defendant accuses the state of trying to reframe this issue by making it a sufficiency argument. The only sufficiency argument that the state makes is that it proves jurisdiction beyond a reasonable doubt. If the state did that, then there is no error. There is no plain error, and there is no ineffective assistance of counsel. And as Justice Chatelain pointed out, a couple of the points that are in the record that do establish jurisdiction, and I'll get into those in just a moment. The other thing that I'd like to point out is that defendant claims the state focuses, and I'm quoting here, almost entirely on ineffective assistance claim without addressing his plain error argument. There's two reasons for this. First of all, in the defendant's argument, we have 20 pages of argument that the trial court aired. Then after 20 pages, defense counsel says, oh, yeah, and there was no objection to this. So he then goes into three pages of argument about ineffective assistance of counsel and one line of plain error. When you say no objection to this, what do you mean? No objection to what? I'm trying to think when I said no objection. You said there were 20 pages, and then she said there was no objection. Okay. I'm kind of lost here. I'm sorry. There were 20 pages of argument that the trial court aired. By the defense. Yes. Then I misspoke. I'm sorry. Then the defendant says, oh, there was no objection raised at trial, and therefore this is plain error or ineffective assistance of counsel. No objection as to the jury instruction? Correct. No objection to anything. No objection. To the testimony. Yes. During those 20 pages. Yes. It does not acknowledge that the error was not preserved. There. I think I finally said that correctly. The error was not preserved. Pardon me? We know the error was not preserved. Correct. So we are at plain error. Absolutely. Or ineffective assistance of counsel. Or ineffective assistance of counsel. So your argument really began to confuse me, but I'm going to let you go on a little while. I guess we're wondering what the point is. Yes. My point is simply that's why the defendant claims that we're making a sufficiency argument. The defendant claims that the trial court erred. The State responds to that in that manner, but focuses on the fact that there is no error. Why wouldn't we look at whether the evidence is closely bound? Oh, absolutely. We do have error because the seven people versus seven. You've conceded that. Yes. And I'd like to go into that. So we have to look at whether the evidence is closely balanced under the plain error rule. Or whether the prejudice was correct. Let me slightly modify what you said. Okay. In order to carry a standard of establishing plain error, a defendant must show, and here I am quoting the Supreme Court on multiple occasions, that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice. That is Seve. That is a quote from Seve, which is quoting Heron, which we've lived with for many, many years. So it's not just close. It's so closely balanced. And to cut to the chase, what we have here is her outcry, and then she felt multiple people versus, it is pure credibility, essentially. Why isn't that closely balanced in this case? The defendant claims that the testimony by the DCF investigator, Mr. Reeves, and a child advocacy forensic interviewer was not corroborative evidence. Our Supreme Court has disagreed with that. The Supreme Court in Bowen says, and I think obviously you're very familiar with Bowen, because you kind of quoted it this morning. A child's initial complaint of sexual abuse has been characterized as often striking in its clarity and ring of truth. It goes on to say, Section 11510 was enacted to provide for reliable corroborating evidence of a child's outcry statement. That's the language from our Supreme Court. This court in People v. Branch said, in light of the victim's age, her complaints to the child abuse counselor and investigator had corroborative value. This is even called the corroborative complaint statute. Put that phrase in Westlaw and you'll come up with lots and lots of cases. Let me ask you this question. If you have an acknowledged Zaire principle violation, so now the jury from the get-go has not been adequately interrogated or questioned regarding those principles, do you think that in a closely balanced case, that is a credibility case, that the failure to properly instruct the jury has an impact such that the error could be so prejudiced as to tip the scales of justice? Do you think there's a correlation? Well, I say that, number one, the defendant has the burden of proving that the error harmed him. Number two, I disagree with the defendant that there is no corroboration in this case. I believe that is the entire point of 11510, is that this child abuse is done in the dark. No, there was no one watching. The defendant wouldn't do this if someone was watching. And how do we corroborate these crimes? Children are reluctant to speak to total strangers about sexual abuses. And when they do, it's strong, it's a clarion call that something is badly wrong. And that is why we created the statute for corroborating evidence. To say that her statements to the DCFS investigator and to the child advocacy forensic investigator is not corroboration, lies in the face of the reason for the statute, and that is those statements are admissible to corroborate the child's statement. There was some inconsistency in the statement given, though, to the child advocacy center, wasn't there? Yes. At one point she denied her stepfather putting his hand in her private part, and then she said she awoke and her dad was putting his. So there was some inconsistency. There was. As opposed to pure corroboration. I think we can look to the testimony of the forensic examiner, Ms. Miller, who has done hundreds of forensic interviews of children like this, and she pointed out that this is very common and that it's not unusual for a child to initially deny a sexual assault. And our Supreme Court, again, has acknowledged this. People v. Swart says that children of sexual abuse are often reluctant to discuss sexual abuse. And she didn't deny the entire incident? Never. Never. No, she did not. And I think it's not only did she talk about what happened to her, but when she described it, I mean, when she says he put his finger in my bad spot and went on to say that her bad spot was where she peed from. When she goes on to describe how the defendant's penis felt in her hand, I mean, 8-year-olds don't know stuff like this unless it's happened to them. To say it was hard like a bone and it had water coming out of it. And again, going back to the actual penetration, she was very clear about what he did, where he did, and when he did it. Thank you, Your Honor. Okay, thank you, Your Honor. Ravonne? Yes, Your Honor. Just three quick points. So as to your question, regarding first-pronged plain error, which is there being a clear and obvious error, which the State has conceded regarding Rule 431B, and it's established that the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error. He has carried his burden to show that the error was actually prejudicial. This is from SETI. So that alone, even if regardless of the seriousness of the error, they've conceded that this is clear and obvious error. So as long as the evidence is closely balanced, that itself shows that it's prejudicial. So you don't think we have to look at all the credibility issues and things like that? Do you think that because it's a one-on-one, just one-on-one, no other evidence like torn-on or something like that? That's it, the reverse, on SEBI. Well, Your Honor. How do you think SEBI is that clear? SEBI isn't that clear. But here we have, I think that's some, there's issues going on with that, too. But here we do have two different versions of the story. They're not, besides them contradicting each other, there's nothing extrinsic that's contradicting their evidence. And when looking at closely balanced arguments, we have to look at both sides. So we can't just look at the State's version of events. We have to look at Mr. Schultz's version as well. So he testified at trial, and he had witnesses testifying at trial who he has lived with. So S.S. and Mr. Schultz has lived with these witnesses, like Brenda, Lisa, I think there's one other that I can't remember. They lived together. And those witnesses, one of the witnesses testified about S.S. telling fibs to get attention and stuff like that, but they've lived with these members of the family. So we have to look at that evidence as well. And regarding S.S.'s allegations to Reese Ann Miller in the CAC interview, she denies for almost 20 minutes the actual charged offense. So it's not about her hand being on Mr. Schultz's penis, it's digital penetration, which was actually charged. So the evidence there is pretty limited. So after 20 minutes of denying any contact between Mr. Schultz's body and her body, besides the hand on penis contact, towards the end she mentions the digital penetration. So if you look at the span of the interview, that's a limited amount. And she was asked repeatedly by Miller, did something happen? Did Mr. Schultz touch you more than the hand-penis contact, et cetera? So that goes on for 20 minutes and she denies it each time. And lastly, the evidence of Miller and Reese that was admissible at trial, but that still stems back to the source, S.S.'s allegations. So I want to emphasize to this Court that the source is S.S. They might corroborate her testimony enough for it to be presented at trial, but here we still have that credibility contest between the two. All right, any other questions? Okay, then Mr. Schultz asks that this Court reverse and remand for a new trial. All right, thank you. Thank you, ma'am. Okay, we're going to take a short recess.